UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DAWN MARIE DENNIS,

                Plaintiff,

-vs-

ULTIMUS FUND SOLUTIONS, LLC

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No. 20-CV-02813-NGG-AYS

AMENDED COMPLAINT

JURY TRIAL DEMANDED

Plaintiff, DAWN MARIE DENNIS, by and through her attorneys, ROSS & ASMAR LLC, complaining of the Defendant, hereby allege as follows:

## THE PARTIES

1. Plaintiff DAWN MARIE DENNIS, (hereinafter "Dennis") is an individual residing in Nassau County, New York.

2. Upon information and belief, Defendant ULTIMUS FUND SOLUTIONS, LLC ("Ultimus") formerly known as The Gemini Companies a/k/a Gemini Comprehensive Fund Services, was and is a domestic corporation whose principal place of business is located at 80 Arkay Drive, Hauppauge, New York.

3. Plaintiff complains pursuant to the Family and Medical Leave Act, 29 U.S.C. Section 2601, et. Seq. ("FMLA") seeking the recovery of lost wages, emotional distress, punitive damages, reasonable attorney fee and costs as a result of discrimination and having her employment terminated by her employer in retaliation for exercising her rights under the FMLA.

## JURISDICTION AND VENUE

4. Jurisdiction is based upon 29 U.S.C. § 2617, 28 U.S.C. 1331 and 1343.

5. The Court has supplemental jurisdiction over any claims brought under state law pursuant to 28 U.S.C. 1367.

6. Venue is proper based upon 28 U.S.C. § 1391(b), insofar as the Plaintiff resides within this Judicial District, the Defendant maintains its place of business in this Judicial district and (b)(2), insofar as the events giving rise to the within causes of action occurred in this Judicial District.

## **FACTUAL ALLEGATIONS**

7. At all times herein pertinent, the Defendant was engaged in an industry having an effect on commerce within the meaning of 29 U.S.C. § 203.

8. At all times herein, Plaintiff was a full-time employee of the Defendant.

9. Upon information and belief, Defendant employs more than 50 people.

10. Plaintiff was an eligible employee under the FMLA when she took medical leave of absence as she had been employed by the Defendant for at least twelve (12) months and worked at least 1250 hours within the last 12 months.

11. Plaintiff was an employee of the Defendant. Plaintiff began working for Defendant in or about July 2011.

12. In or about September 2018, Plaintiff's high school age son was diagnosed with brain cancer.

13. Plaintiff provided proof of the diagnosis and treatment information.

14. Plaintiff completed the FMLA leave of absence form.

15. From that moment, Defendant and its agents commenced a course of conduct surely crafted to terminate Plaintiff in retaliation while simultaneously attempting to make their actions appear as if they fell within the bounds of the law.

16. When the Plaintiff exercised her FMLA leave, the attitude and behavior of her superiors toward her changed dramatically.

17. While she had previously been given positive reviews, bonuses and recognition, after

advising the Defendant of her taking FMLA time, she quickly became the subject of constant criticism.

18. Plaintiff was particularly targeted by her supervisor Richard Malinowski, who began a campaign of harassment and criticism after the Plaintiff notified that she would exercise her rights under the FMLA.

19. The criticism was not the result of the Plaintiff's work. The criticism was due to the Defendant's and Richard Malinowski's unhappiness that Plaintiff had exercised and was continuing to exercise her rights under the FMLA.

20. Mr. Malinowski's abrupt shift in behavior constituting retaliation against Plaintiff consisted of, *inter alia*, frequently refusing to engage with Plaintiff or answer her work related questions, intentionally turning his back on Plaintiff and refusing to look at her, and yelling at Plaintiff in front of other paralegals in the office.

21. Mr. Malinowski's abuse rose above the level of simple harassment and unpleasant workplace behavior. Instead, it was the beginning of a months long campaign to attempt to drive Plaintiff to quit before ultimately firing her on pretextual grounds.

22. Mr. Malinowski would not clock Plaintiff in/out when required for work she had to perform offsite, i.e. attending Board meetings. Such entries had to be clocked in/out by Mr. Malinowski.

23. Mr. Malinowski's conduct became so egregious that at least one other employee contacted Defendant's CEO regarding the treatment of Plaintiff.

24. As a result of exercising her right to FMLA time, Defendant retaliated against Plaintiff in numerous other ways, including, but not limited to, denying Plaintiff sabbatical time which she had earned and was permitted to take.

25. After his cancer diagnosis, Plaintiff's son was the recipient of a Make-A-Wish Foundation wish—he requested a trip to Disney.

26. Plaintiff quickly informed Defendant of the dates she would be requesting for her sabbatical for her son's trip.

27. Sabbatical was an employment benefit available to employees after approximately eight years of employment.

28. Plaintiff had reached her window of opportunity to apply for her sabbatical.

29. When Plaintiff was preparing her application for the sabbatical, she was informed that as long as she had her eight years she will get her sabbatical.

30. Plaintiff was in good standing with Defendant at the time she applied for her sabbatical.

31. Since beginning her work for Defendant in 2011 through the time she applied for the sabbatical in February 2019, Plaintiff had only one "Corrective Action Form" as part of her employment in December 2017—over 14 months before she applied for her sabbatical.

32. Despite being eligible for her sabbatical, Plaintiff was informed that her sabbatical request had been denied.

33. Mr. Malinowski would not provide Plaintiff a clear reason for why her sabbatical had been denied, and refused to put any reasoning in writing.

34. The Defendant would not provide a clear an answer as to why her sabbatical request had been denied because the request for sabbatical had been denied in retaliation for the Plaintiff taking FMLA time.

35. After Plaintiff insisted on being given a reason why she was being denied her sabbatical, which is routinely granted to other employees, Plaintiff was issued a "Corrective Action

Form" on or about March 13, 2019.

36. The March 13, 2010 Corrective Action Form was issued in response to the Plaintiff's request that she be given a reason for the denial of the sabbatical request.

37. Defendant denied the Plaintiff's sabbatical request in the hopes that she would become frustrated by the denial of her request and voluntarily quit.

38. When she did not quit, the Defendant quickly issued a false Corrective Action Form to "paper the file" against the Plaintiff -creating a pretext so that she could be fired.

39. Plaintiff requested permission to partially work from home so that even on days when she had to take her son to the hospital for treatment she would be able to conduct a few hours of work in the morning prior to going to the hospital.

40. Plaintiff had been given the opportunity to work with a flexible work schedule and to work from home while employed with the Defendant.

41. When the Defendant became dissatisfied because the Plaintiff had exercised her FMLA rights, the Defendant retaliated against the Plaintiff by ending the flexible work schedule and work from home schedule. The termination of the flexible work schedule and home schedule was done in retaliation for the Plaintiff exercising her FMLA right. Defendant sought to render Plaintiff's working conditions such that she would feel forced to quit.

42. Plaintiff suffered further adverse employment action in retaliation for her exercise of her FMLA rights.

43. Upon exercising her FMLA rights, Plaintiff was subjected to corrective action for alleged violations – pretextual violations – for which other employees were not subjected to any discipline.

44. Defendant engaged in pretextual discipline for unsubstantiated claims in an effort to

hide retaliation for the Plaintiff exercising her FMLA rights.

45. Defendant engaged on a day to day campaign to drive Plaintiff out of the company as a result of her exercise of FMLA rights.

46. Defendant's and Richard Malinowski's campaign of harassment and intimidation resulted in the eventual illegal retaliatory firing of the Plaintiff.

47. On or about June 13, 2019, Defendant informed Plaintiff that she was being terminated.

48. Defendant never provided written notice of the purported reason for the Plaintiff's termination.

49. Despite demand, Defendant and Richard Malinowski has refused to provide and has never provided Plaintiff with written notice of the reason for her termination.

50. As a result of her filing for FMLA benefits, Plaintiff suffered harmful disparate treatment from Defendant in that she was fired for an alleged mistake where others had not been fired for making the same alleged mistake, and in that she was denied sabbatical leave given to other similarly situated employees.

51. Defendant clearly acted with retaliatory intent in treating Plaintiff in a disparate manner.

52. Plaintiff was denied sabbatical leave she had earned and that was routinely granted to other employees of her longevity.

53. Plaintiff was issued false Corrective Action reports. The issuance of these false Corrected Action Reports in March and April 2019 was part of a plan by the Defendant (which culminated in June 2019) to terminate her in retaliation for her exercise of FMLA rights. Defendant decided to fire Plaintiff and took its time to "paper the file" and eliminate Plaintiff.

54. Defendant became tired and annoyed by Plaintiff exercising her FMLA rights.

55. Defendant has set forth a pretextual cause for disciplinary action against Plaintiff concerning public filing of information on or about June 10, 2019, shortly before Plaintiff's termination.

56. Plaintiff was terminated after certain information was filed in an SEC filing on or about June 10, 2019.

57. Plaintiff was never advised as to why she was terminated.

58. Upon information and belief, Plaintiff was told she was terminated because of the SEC filing on June 10, 2019.

59. The basis of the termination was pretextual.

60. Similar or identical information was disclosed in a similar way by at least two other employees, one on or about January 29, 2018—that employee was subsequently promoted—and by another employee on or about July 29, 2019—that employee had already been promoted. Upon information and belief, neither of those employees were disciplined and both of those employees remain employed by Defendant.

61. Defendant terminated Plaintiff in retaliation for exercising her rights under the FMLA.

62. Defendant did not act in good faith and Plaintiff is entitled to an award of liquidated damages.

*<ins>AS AND FOR A FIRST CAUSE OF ACTION<br>
FOR INTERFENECE AND RETALIATION UNDER THE<br>
FAMILY AND MEDICAL LEAVE ACT</ins>*

63. The Plaintiff hereby incorporates all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

64. Defendants discriminated against Plaintiff and violated her rights by virtue of retaliation against her for exercising her rights under FMLA.

65. Plaintiff's suffered adverse employment action as result of retaliation for her exercising of her FMLA rights.

66. Plaintiff has suffered damages including lost wages, emotional distress, punitive damages, reasonable attorney fee and costs.

67. Plaintiff has been damaged in an amount greater to be determined at trial, but in no event less than One Million Dollars ($1,000,000.00).

68. Jury Demand. Plaintiff demands a jury trial on issues to be tried.

**WHEREFORE,** Plaintiff prays for judgment as against all Defendants as follows:

(a) Declaring that Defendant engaged in unlawful employment practices prohibited by the Family and Medical Leave Act, 29 U.S.C. Section 2601, et. seq. by engaging in in adverse employment actions, disparate treatment, and unlawfully terminating her employment in retaliation for exercising her rights under the FMLA;
(b) Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's improper acts and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices and discrimination and retaliation;
(c) Awarding Plaintiff "back pay" damages and "front pay" damages; and
(d) Awarding Plaintiff any and all liquidated damages as permitted under any and all applicable statutes; and
(e) Awarding Plaintiff attorneys fees, costs, disbursements, and expenses incurred in the prosecution of this action; and
(f) Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper, to remedy the Defendant's unlawful employment practices, disparate treatment, retaliation, and violations as set forth herein.

Dated: New York, New York
December 11, 2020

Respectfully submitted,

_____
By: Steven B. Ross, Esq. (SR 5059)
steven@rossasmar.com
Ross & Asmar LLC
499 Seventh Avenue
23rd Floor South Tower
New York, NY 10018
(212) 736-4202
(212) 736-2873 facsimile