UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────
DAWN MARIE DENNIS,

               Plaintiff,

     -against-

ULTIMUS FUND SOLUTIONS, LLC,

              Defendant.
───────────────────────────────

**MEMORANDUM & ORDER**
20-CV-2813 (NGG)(AYS)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Dawn Marie Dennis brings this action against her former employer, Defendant Ultimus Fund Solutions, under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq* ("FMLA"). Plaintiff alleges that Defendant interfered with her FMLA rights and retaliated against her for exercising those rights. (Am. Compl. (Dkt. 13) ¶ 3.) She seeks recovery of lost wages, emotional distress and punitive damages, and attorneys' fees and costs. (*Id.*) Defendant's motion to dismiss the Complaint is currently before the court. (*See* Def.'s Mot. to Dismiss (Dkt. 16); Def.'s Mem. in Support of Mot. To Dismiss ("Def.'s Mem.") (Dkt. 17); Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss ("Pl.'s Opp.") (Dkt. 19); Def.'s Reply in Support of Mot. to Dismiss ("Def.'s Reply") (Dkt. 23).) For the reasons stated below, Defendant's motion to dismiss is GRANTED in part and DENIED in part.

**I.   BACKGROUND**

The following facts are taken from the Amended Complaint, which the court accepts as true when deciding a motion to dismiss. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

Defendant hired Plaintiff as a paralegal in or around July 2011. (Compl. ¶ 11; Def.'s Mem. at 3.) Around September 2018, her high school aged son received a brain cancer diagnosis. (*Id.* ¶¶ 12-14.) At about that time, she provided Defendant with proof of

1

the diagnosis and treatment plan and completed the FMLA leave of absence form. (*Id.*)

Plaintiff had previously received positive reviews, bonuses, and recognition for her work, but she alleges that her employer's behavior toward her changed sharply after she notified it of her son's diagnosis and began taking leave to care for him. (*Id.* ¶¶ 17, 20.) The change in the behavior of her supervisor, Richard Malinowski, was particularly pronounced. She became the subject of constant criticism, and he "frequently refus[ed] to engage with Plaintiff or answer her work related questions, intentionally turn[ed] his back on Plaintiff and refus[ed] to look at her, and yell[ed] at Plaintiff in front of other paralegals in the office." (*Id.* ¶¶ 17, 20.) Malinowski also refused to clock her in and out of the office when she was required to perform job duties off-site, a task which had to be done by her supervisor. (*Id.* ¶ 22.) She alleges that this treatment was part of a prolonged effort to compel her to quit, and that it was so severe that at least one of her colleagues contacted the company's CEO about it. (*Id.* ¶¶ 23-24.) She also alleges that she was denied access to benefits that she had previously enjoyed, including work-from-home and flexible schedule options that enabled her to perform her work obligations around her son's doctor's appointments. (*Id.* ¶¶ 39-40.)

In February 2019, Plaintiff requested and was denied sabbatical leave to take her son on a Make-A-Wish Foundation trip to Disney. (Compl. ¶¶ 25-32.) According to the company's Employee Policies and Procedures Manual, an employee becomes eligible to request sabbatical leave beginning on their seventh anniversary of employment, and the sabbatical may be taken during the employee's eighth year of employment. (Pl.'s Opp. at 6; Employee Manual (Dkt. 18-1) at 40.) Plaintiff, who was hired in 2011, alleges that she was eligible for sabbatical leave when she requested it in 2019, and that she was in good standing when she made the request. (Compl. ¶¶ 30-31.) She asserts that she

was not given a clear explanation for the denial, and that when she insisted on one, she was issued a pretextual disciplinary action, called a Corrective Action Form. (*Id.* ¶¶ 34-36.) She alleges that the pretextual Corrective Action Form was intended to conceal the retaliatory intent behind the denial of her sabbatical request. (*Id.* ¶ 44.) She further asserts that the company treated her differently from similarly situated employees by denying her leave request and subjecting her to a disciplinary procedure for alleged misconduct for which other similarly situated employees were not disciplined. (*Id.* ¶¶ 43, 52.)

Plaintiff was terminated in or around June 2019. (*Id.* ¶ 56.) Defendant contends that she was fired because she was responsible for errors in an SEC filing in which nonpublic information was disclosed. (Def.'s Mem. at 17.) Plaintiff alleges that Defendant's rationale was pretextual and submits that similarly situated employees who disclosed comparable information were not disciplined. (*Id.* ¶ 60.) Specifically, she asserts that an employee who disclosed such information on or about January 29, 2018 was then promoted, and that another employee who disclosed such information on or about July 29, 2019 had previously been promoted, and that neither of those employees were subject to discipline. (*Id.*)

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[1] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

alleged." *Iqbal*, 556 U.S. at 678. "In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Brown v. Omega Moulding Co.*, No. 13-cv-5397 (SJF) (ARL), 2014 WL 4439530, at *2 (E.D.N.Y. Sept. 9, 2014) (*citing Aegis Ins. Services, Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013)). However, "mere labels and conclusions or formulaic recitations of the elements of a cause of action will not do; rather, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). "In assessing the legal sufficiency of a claim, the court may consider those facts alleged in the complaint, as well as documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007).

### III. DISCUSSION

The FMLA authorizes eligible employees to take up to 12 weeks of protected leave during a 12-month period to care for qualifying family members with serious health conditions. *See* 29 U.S.C. § 2612(a)(1)(C). Protected caretaking leave may be taken "intermittently or on a reduced leave schedule when medically necessary." *Id.* § 2612(b)(1). Employers are prohibited from interfering with, or attempting to interfere with, protected leave and from retaliating against an eligible employee for exercising the right to take protected leave. *See id.* § 2615. Plaintiffs may bring "two distinct types of FMLA claims: interference claims and retaliation claims." *De Figueroa v. New York*, 403 F. Supp. 3d 133, 153 (E.D.N.Y. 2019).

#### A. FMLA Interference

"To prevail on a claim of interference with her FMLA rights, a plaintiff must establish: 1) that she is an eligible employee under

4

the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Shultz v. Congregation Shearith Israel of City of New York*, 867 F.3d 298, 307 (2d Cir. 2017). Defendant does not dispute the first four elements. (Def.'s Mem. at 13-14.) Instead, it asserts that Plaintiff has not adequately alleged that she was denied any FMLA benefits to which she was entitled. (*Id.*)

"The fifth element, *i.e.*, that the employee was denied FMLA leave, may be satisfied either by a formal denial or via a 'discouragement theory' of denial." *De Figueroa*, 403 F. Supp. 3d at 155. Under a discouragement theory, "a plaintiff is denied benefits under the FMLA if the plaintiff tried to assert her FMLA rights and was thereafter discouraged from taking FMLA leave." *Id.*

The Complaint does not allege separate interference and retaliation claims; instead, it asserts one cause of action for both interference and retaliation under the FMLA.[2] (*See* Compl. ¶¶ 63-67.) However, the Complaint does not include any allegations suggesting that Plaintiff was denied or discouraged from exercising her right to take FMLA leave. On the contrary, it repeatedly confirms that she was able to do so. (*See, e.g.,* Compl. ¶¶ 16 ("Plaintiff exercised her FMLA leave . . . ."); 19 ("Plaintiff had exercised and was continuing to exercise her rights under the FMLA"); 24 ("As a result of exercising her right to FMLA time . .

---

[2] As noted above, FMLA interference and retaliation are two separate causes of action. *See De Figueroa*, 403 F. Supp. 3d at 153. Nonetheless, drawing all inferences in the light most favorable to the Plaintiff for purposes of deciding this motion, the court construes her pleading to seek relief for both FMLA interference and retaliation, and considers the sufficiency of her allegations accordingly.

."); 34 ("Plaintiff t[oo]k[] FMLA time"); 41 ("Plaintiff had exercised her FMLA rights"); 43 ("Upon exercising her FMLA rights . . ."); 44 ("Plaintiff exercise[ed] her FMLA rights"); 54 (same).) Because Plaintiff has failed to allege any facts suggesting that Defendant denied her FMLA leave request or discouraged her from taking FMLA leave, her interference claim is dismissed. *See De Figueroa*, 403 F. Supp. 3d at 156.

### B. FMLA Retaliation

The anti-retaliation provisions of the FMLA prohibit employers from "us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions." *De Figueroa*, 403 F. Supp. 3d at 153 (citing 29 C.F.R. § 825.220(c)). To survive a motion to dismiss a FMLA retaliation claim, a plaintiff must carry a "minimal" burden of pleading that they were subject to FMLA retaliation. *See Robles v. Medisys Health Network, Inc.*, No. 19-cv-6651 (ARR) (RML), 2020 WL 3403191, at *19 (E.D.N.Y. June 19, 2020).[3]

The elements of a prima facie case for FMLA retaliation are that "(1) [the employee] exercised rights protected under the FMLA, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Serby v. New York City Dep't of Educ.*, 526 F. App'x 132, 134 (2d Cir. 2013). However, "[a]t the motion to dismiss stage, a plaintiff need not plead specific facts establishing a

---

[3] Later, at the evidentiary stage, the court employs a *McDonnell Douglas* burden-shifting framework where, if Plaintiff has made a prima facie showing, the burden shifts to the defendant "to articulate a legitimate, non-discriminatory reason for its actions." *Achille v. Chestnut Ridge Transport., Inc.*, 584 F. App'x 20, 22 (2d Cir. 2014). "If [the defendant] carries its burden, [the plaintiff] must then demonstrate that [the defendant's] articulated reason was pretextual." *Serby v. New York City Dep't of Educ.*, 526 F. App'x 132, 134 (2d Cir. 2013). That burden-shifting framework is not applicable at the pleading stage.

prima facie case of discrimination." *Seitz v. New York State*, No. 18-cv-4149 (PKC) (LB), 2019 WL 4805257, at *11 (E.D.N.Y. Sept. 30, 2019). "Instead, a plaintiff need only plead facts sufficient to state a claim to relief that is plausible on its face." *Id.*

Defendant argues that Plaintiff has failed to plausibly state a retaliation claim because she has not adequately alleged the third and fourth elements of a prima facia case for FMLA retaliation. (Def.'s Mem. at 15-20.) Plaintiff responds that her allegations sufficiently state that she was treated adversely and differently from similarly situated employees. (Pl.'s Opp. at 4-11.) As explained below, Plaintiff has adequately alleged those elements and sufficiently stated a claim for FMLA retaliation.

### 1. Adverse Employment Action

"An adverse employment action is "a 'materially adverse change' in the terms and conditions of employment." *Seitz*, 2019 WL 4805257, at *16. A materially adverse change is "any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising his legal rights." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011). These changes must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). Qualifying adverse actions may include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Seitz*, 2019 WL 4805257, at *16 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).

Plaintiff alleges that, after exercising her FMLA rights, her work-from-home and flexible scheduling benefits were revoked; that she was denied sabbatical leave for which she allegedly was eligible; that her supervisor began treating her disrespectfully; that she was subjected to pretextual disciplinary actions; and that she

7

was terminated from her job. (*See, e.g.*, Compl. ¶¶ 24, 34, 35, 39, 40, 41, 46.) These assertions are sufficient to allege that adverse employment actions occurred. *See, e.g.*, *Shultz*, 867 F.3d at 307 (holding that notice of termination was sufficient to satisfy the adverse employment action for FMLA retaliation); *see also Corrado v. New York Unified Ct. Sys.*, 163 F. Supp. 3d 1, 24 (E.D.N.Y. 2016) (same for negative performance reviews).

Defendant's position that Plaintiff's termination was warranted based on poor performance does not undermine the sufficiency of her allegations at this procedural posture. Determining whether the adverse employment action was justified is a factual question, not a dispute to be resolved at the pleading stage. *See, e.g.*, *Claiborne v. Winthrop Univ. Hosp.*, No. 17-cv-6692 (JFB)(GRB), 2019 WL 2439430, at *5 (E.D.N.Y. Feb. 13, 2019), *report and recommendation adopted*, 2019 WL 1349528 (E.D.N.Y. Mar. 25, 2019) (sustaining FMLA retaliation allegations where defendant argued that plaintiff was terminated based on her performance).

### 2. Retaliatory Intent

A plaintiff may sufficiently allege that adverse employment actions give rise to an inference of retaliatory intent by pleading that "a causal connection exists between the plaintiff's protected activity and the adverse action taken by the employer." *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 152 (2d Cir. 2012). "A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Fukelman v. Delta Air Lines, Inc.*, No. 18-cv-2 (PKC)(PK), 2020 WL 4587496, at *19 (E.D.N.Y. Apr. 13,

8

2020), *report and recommendation adopted*, 2020 WL 2781662 (E.D.N.Y. May 29, 2020).

Defendant contends that Plaintiff has failed to allege facts indicative of retaliatory intent. Primarily, Defendant argues that the allegedly adverse employment actions were too far removed temporally from when Plaintiff exercised FMLA leave to suggest that they were retaliatory. (*See, e.g.*, Def.'s Mem. at 19-20; Def.'s Reply at 6-7.) It relies on *Kim v. Goldberg, Weprin, Finkel Goldstein, LLP*, where a court granted summary judgment for defendants after reasoning that "the passage of more than two to three months between the protected activity and the adverse employment action militates against an inference of causation." 862 F. Supp. 2d 311, 319 (S.D.N.Y. 2012). Defendant also contends that Plaintiff's allegations of disparate treatment are insufficient because she has not specifically identified the ways in which she was similarly situated to the employees who were allegedly treated differently. (Def.'s Reply at 7-8.)

Defendant's contentions, including its reliance on *Kim*, are misplaced. *Kim* was decided on a motion for summary judgment, not at the pleading stage, and its reasoning does not foreclose Plaintiff from pleading an inference of discriminatory intent by alleging that she was subject to disparate treatment. Here, Plaintiff has alleged that Defendant denied her request for sabbatical leave, which she alleges was granted to similarly eligible employees, and that, unlike other similarly situated employees, she was terminated for publicly disclosing information in an SEC filing. (Compl. ¶¶ 52, 60.) Plaintiff may allege retaliation by pleading either temporal proximity or disparate treatment; she is not required to allege both. Accordingly, Defendant's motion to dismiss Plaintiff's FMLA retaliation claim is denied.

### C. Emotional Distress and Punitive Damages

Defendant also moves to dismiss Plaintiff's claims for emotional distress and punitive damages. (Def.'s Mem. at 20-21.) The

FMLA authorizes recovery for "[lost] wages, salary, employment benefits, or other compensation" or, if such losses were not incurred, then "any actual monetary losses sustained by the employee as a direct result of the [FMLA] violation, such as the cost of providing care," plus interest and, in certain circumstances, liquidated damages. 29 U.S.C. § 2617(a)(1)(A). "Because the FMLA specifically lists the types of damages that an employer may be liable for, and it includes damages only insofar as they are the actual monetary losses of the employee . . . , [damages for] emotional distress are not recoverable in an FMLA action." *Scott v. ProClaim Am., Inc.*, No. 14-cv-6003 (DRH) (ARL), 2017 WL 1208437, at *13 (E.D.N.Y. Mar. 31, 2017). Punitive damages are similarly not recoverable. *Id.* Accordingly, Plaintiff's claims for emotional distress and punitive damages are dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's claim for FMLA interference and for emotional distress and punitive damages is GRANTED and Defendant's motion to dismiss Plaintiff's claim for FMLA retaliation is DENIED. The parties are directed to contact the chambers of Magistrate Judge Anne Y. Shields concerning the next steps in this case.

SO ORDERED.

Dated:    Brooklyn, New York
          August 12, 2021

    /s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

10